IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| Richard P. Conrad, Jr. | : | |
| Individually and as parent and natural | : | Case no. |
| guardian of his child "C.C." | : | |
| c/o The Law Office of Josh Brown, LLC., | : | Judge |
| 1554 Polaris Parkway, Suite 325 | : | |
| Columbus, OH 43240, | : | Jury demand endorsed hereon. |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| Madison Local School District | : | |
| Board of Education | : | |
| 1379 Grace Street | : | |
| Mansfield, OH 44905, | : | |
| | : | |
| Doug Mousier | : | |
| In his official capacity as President of | : | |
| the Madison Local School District | : | |
| Board of Education | : | |
| 1379 Grace Street | : | |
| Mansfield, OH 44905, | : | |
| | : | |
| Amy Walker | : | |
| In her official capacity as Vice President | : | |
| of the Madison Local School District | : | |
| Board of Education | : | |
| 1379 Grace Street | : | |
| Mansfield, OH 44905, | : | |
| | : | |
| Melissa Walker | : | |
| In her official capacity as Member of the | : | |
| Madison Local School District | : | |
| Board of Education | : | |
| 1379 Grace Street | : | |
| Mansfield, OH 44905, | : | |
| | : | |
| Tim Wigton | : | |

| | |
|---|---|
| In his official capacity as Member of the | : |
| Madison Local School District | : |
| Board of Education | : |
| 1379 Grace Street | : |
| Mansfield, OH 44905, | : |
| | : |
| Mary Kotterman | : |
| In her official capacity as Member of the | : |
| Madison Local School District | : |
| Board of Education | : |
| 1379 Grace Street | : |
| Mansfield, OH 44905, | : |
| | : |
| Krista Ferini | : |
| 1379 Grace Street | : |
| Mansfield, OH 44905, | : |
| | : |
| Andrew Keeple, | : |
| 1379 Grace Street | : |
| Mansfield, OH 44905, | : |
| | : |
| Defendants. | : |

VERIFIED COMPLAINT

For his Complaint against Defendants, made on behalf of his minor child C.C., Plaintiff states as follows.

I. PARTIES

1. Richard P. Conrad, Jr. is a resident of Madison Local School District. His child C.C. attends Madison Local School District. During all events relevant to this Complaint, Conrad's child attended Madison Local School District.

2. Madison Local School District is a local school district in and around Mansfield, Richland County, Ohio. The District is a "local education agency" pursuant to

- 2 -

20 U.S.C. § 1232h(c)(6).

3. Doug Mousier, Amy Walker, Melissa Walker, Tim Wigton, and Mary Kotterman are the members of the Madison Local School District, and are named in their official capacity only.

4. Krista Ferini is a teacher at Madison Local School District.

5. Andrew Keeple is a Principal at Madison Local School District.

II. JURISDICTION AND VENUE

6. This Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, and to the extent applicable 1367, because this case involves the interpretation of a federal law (namely the First and Fourteenth Amendments to the U.S. Constitution, the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1988, and 42 U.S.C. § 1983), the effect of government agencies' interpretation of those laws, and the Plaintiff's rights pursuant to those federal laws.

7. Federal law affords this Court authority to grant Plaintiff's requested declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and Civil Rule 57.

8. Plaintiff is unaware of any pending state litigation on these matters.

9. This Court should accept discretionary jurisdiction for a declaratory judgment because this case involves harms caused by Defendants in violating the constitutional right of Plaintiffs to Free Speech.

10. The case is ripe for review because, as this Complaint will show, the harms

discussed below caused Plaintiff damages.

11. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) and (d), because Plaintiffs reside in this District and "a substantial part of the events or omissions giving rise to all Plaintiff's claim occurred" in this District.

III. STATEMENT OF FACTS

12. On or around November 25, 2024, Plaintiff's child C.C. wore a t-shirt to school that said "Let's Go Brandon." (Ex. A.)  C.C. wore a flannel shirt over top of the t-shirt that day.

13. The phrase "Let's Go Brandon" communicates criticism of certain media outlets for a well-documented pattern of misreporting facts in a politically biased fashion. In this particular incident,  a large crowd at a NASCAR race was heard shouting a profane disdain for then-President Joseph R. Biden, chanting "F*** Joe Biden." The reporter on the scene reported the chant as "Let's go Brandon," as if the chant was actually praise for the winner of the race, whose first name was Brandon. From that point forward, that moment was perceived as a microcosm of a larger problem, and "Lets Go Brandon" became a popular expression of certain people's opinion toward the media and American politics.

14. Before school starts, students at this school have "Ram Time." During Ram Time, C.C. was wearing his t-shirt in the hallway.

15. C.C. had worn a shirt with this content many time in the previous school year (i.e., 2023-2024). No person expressed any negativity toward C.C. or his shirt that

previous year.

16. During this school year (2024-2025) no person expressed any negativity toward C.C. or his shirt, except Teacher Krista Ferini.

17. Ferini is a registered Democrat in Crawford County, Ohio.

18. Ferini saw the t-shirt and said to C.C., "button that up, I know what that means."

19. C.C. followed Ferini's instruction and buttoned up his flannel shirt, so that the content of his speech and C.C.'s expression of his opinions could not be seen.

20. Later in the day, in third-period, C.C. had band practice. The room was hot and does not have air conditioning. To cool off, C.C. took off his flannel.

21. C.C.'s first class after lunch is Ferini's class. C.C. and other students are allowed to leave their class materials in Ferini's classroom while they are at lunch. C.C. went into Ferini's classroom for this purpose, which is typical for him.

22. No person expressed any negativity toward C.C. or the content of C.C.'s shirt, except Ferini.

23. Ferini saw C.C. in the classroom and the words on his shirt.

24. Ferini told C.C. she was "writing him up" to punish him for the content on his shirt.

25. C.C. was given a "pink slip" which is a referral to the school Principal Andrew Keeple, for discipline.

26. C.C. went to lunch as normal.

27. During Ferini's class, C.C. was called to the Principal Keeple's office.

28. Keeple demanded that C.C. wear his flannel the rest of the school day and instructed C.C. to never again wear an item communicating the content of this speech.

29. Sometime in or around late January 2025, C.C. wore the t-shirt again.

30. Again, no person expressed negativity toward C.C. or the content of his shirt . . . again, except Ferini.

31. During the time in-between fifth and sixth period, Ferini stopped C.C. while he was walking into another teacher's math class.

32. Ferini said, "Hey [C.C.], come here" waiving C.C. to come to her. Ferini was standing a few feet outside the class, waiting for C.C. Ferini asked C.C. "do you like offending people?"

33. C.C. responded with "that's not my problem, nobody has to read my shirt."

34. Ferini gave C.C. a dirty look and walked away.

35. During that school day, Principle Andrew Keeple called C.C.'s father, Plaintiff Conrad.

36. Keeple told Conrad that there was another incident of C.C. violating the dress policy. If it was to continue, C.C. would be further disciplined.

37. Conrad asked the Principle for an in-person meeting, wanting to discuss what the problem was with C.C. personal expression.

38. The Principle said he would be available until about 3:00 p.m. that day.

39. Conrad and Conrad's own father went to the school together to discuss the

- 6 -

situation.

40. Keeple sat with both men. Keeple said that "Let's Go Brandon" is "code" for a vulgar expression.

41. Conrad told Keeple that Conrad did not interpret it that way.

42. Conrad ultimately told Keeple that he would not instruct C.C. to refrain from wearing clothing communicating this content.

43. On March 24, 2025, C.C. wore the same shirt to school again.

44. No person expressed any negativity toward C.C. or the shirt.

45. While in Ferini's class, C.C. could see that Ferini was furiously writing an email about him (C.C. could see the computer screen).

46. Two days later, C.C. was called to the Principle's office again.

47. C.C. and the Principle spoke alone in the Principle's office.

48. This time, the Principle did not speak much. He only said (something to the effect of) "I will need you to sign this to let you know that you have after-school detention. You know why you're down here."

49. On at least two more occasions in March of 2025, District officials punished C.C. for the content of his "Let's Go Brandon" t-shirt.

50. C.C. would like to express his personal opinions, including wearing t-shirts with the content of the t-shirt he was punished for wearing. However, C.C.'s free speech is punished and chilled by the District's punishment.

51. The District's officials allow many other different expressions and speech

on student's clothing, at school, including political speech.

52. The email in Exhibit B was sent to Plaintiff Conrad, shortly after Keeple punished his child C.C. for the content of his speech. The email says,

> [t]his letter is to inform you that your child has been issued a [*sic*] after school detention due to the disciplinary reasons listed below. The following infraction was committed: REPEATED VIOLATIONS OF SCOC L1, which violates the school policy of LEVEL 1-RULE 14.

(Ex. B.)

53. Plaintiff believes "SCOC" stands for "Student Code of Conduct." Plaintiff was unable to determine what "L1" means.

54. LEVEL 1-RULE 14 says, "14. Repeated violation of the student conduct code." (*See* Ex. C at p. 43.)

55. The Madison Local School District Board of Education promulgated the Student Code of Conduct.

56. Teacher Ferini and Principle Keeple exercised discretion granted to them by the District's Board of Education, in accord with the District's "Secondary Grades 6-12 Parent & Student Handbook 2024-2025" which includes the Student Code of Conduct. (*See* Ex. C.)

57. The actions of Ferini and Keeple were consistent with the policies and customs of the Madison Local School District.

58. The policies and customs of the schools within the Madison Local School District are set by the Board of Education through its Student handbook, which is offered

here as Exhibit C.

59. This Code of Conduct provides no clarity on the rights of students to free speech. Thus, the Madison Local School District's Student Code of Conduct is unconstitutionally vague because it grants broad discretion to individual government employees, who may exercise that discretion in an arbitrary, capricious, and discriminatory manner, without recourse or accountability.

60. The Madison Local School District Board of Education, through its Student Code of Conduct, even when applied to non-disruptive speech (such as C.C.'s speech) allows for government officials to engage in content-based restrictions at their discretion.

61. Such content-based restrictions do not further a compelling government interest, do not advance a pedagogical purpose, are not narrowly tailored, do not allow for alternative channels of speech, and are not the least restrictive means of speech regulation available.

COUNT ONE:
FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION:
FREEDOM OF SPEECH
(DAMAGES, INJUNCTIVE, AND DECLARATORY RELIEF)
(42 U.S.C. § 1983)
Against All Defendants

62. Plaintiffs incorporates the preceding, as if fully restated herein.

63. Local governing bodies, such as school districts, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief. *Monell v. Department of Social Services*, 403 U.S. 658, 690 (1978).

64. C.C.'s t-shirt constitutes speech that is protected under both the Ohio and United States Constitutions.

65. The First Amendment to the Constitution of the United States includes a clause granting freedom of speech to all citizens. It prohibits censorship or punishment for protected expression. It is incorporated and made applicable to the states by the Fourteenth Amendment to the United States Constitution.

66. The Ohio Constitution contains a similar section. "Every citizen may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of the right; and no law shall be passed to restrain or abridge the liberty of speech." Ohio Const., art. I, § 11.

67. Teacher Ferini and Principle Keeple punished C.C. for the content of the speech on his shirt.

68. Non-disruptive speech is protected speech under the First Amendment and Article I, Section 11. *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503, 509, 89 S. Ct. 733 (1969). In *Tinker* the U.S. Supreme Court found that students' speech was protected, where students wore black arm bands in school, as a protest against government actions and policy regarding the United States' involvement in the War in Vietnam. The Court also held that the students did not lose their First Amendment rights to freedom of speech when they stepped onto school property. In order to justify the suppression of speech, the school officials must be able to prove that the conduct in question would "materially and substantially interfere" with the operation of the school.

*Id.* at 513.

69. Political speech is the most protected type of speech. The United States has "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-280, 84 S.Ct. 710 (1964) citing: *Terminiello v. Chicago*, 337 U. S. 1, 337 U. S. 4; *De Jonge v. Oregon*, 299 U. S. 353 (1937).

70. C.C.'s expression did not and does not materially and substantially interfere with the orderly conduct of educational activity.

71. When Ferini and the Principle harassed and punished C.C. for the content communicated on his shirt, they were not doing so in reaction or anticipation of a disruption to the school. Rather, they were standing against the content of C.C.'s speech and the principle of demonstration of that content itself. *Tinker* at fn. 3. Ferini and Keeple simply felt the school is no place for demonstrations of certain personal opinions. *Id.*

72. The messages C.C. expressed are exclusively C.C.'s private expression and are not school-sponsored speech.

73. The District allows many different kinds of personal speech on student's clothing. However, Defendants singled out C.C.'s expression and punished C.C. for it.

74. Viewpoint-based restrictions on speech in a public forum are presumptively unconstitutional and are subject to strict scrutiny.

75. Time, place, and manner restrictions on speech must be content-neutral,

narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.

76. Defendants' punishment of C.C. suppresses and chills C.C.'s right to express his personal opinion.

77. Defendants expressly interpret their policy in a viewpoint-discriminatory manner, evidenced by the fact that they permit other expressions in many contexts.

78. Defendants' unequal treatment of C.C.'s expression is also a content-based restriction of her speech in an otherwise open forum.

79. Defendants' policy and practice also impose an unconstitutional heckler's veto because they permit the restriction of protected student expression merely because the school officials deem the student's expression offensive.

80. Prior restraints on speech may not delegate overly broad discretion to government decision-makers, may not allow for content-based restrictions, must further a compelling government interest, must be narrowly tailored, and must be the least restrictive means available.

81. Defendant Madison School District's policy, custom, and practice impose an unconstitutional prior restraint because they vest the school officials with unbridled discretion to permit or deny student expression, outside of the school itself. This permits content and viewpoint-based enforcement of the policies.

82. Even if people at the school were offended by the content of C.C.'s expression, "[the "substantial disruption"] burden cannot be met if school officials are

driven by 'a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint.'" *J.S. v. Blue Mt. Sch. Dist.*, 650 F.3d 915, 926 (3rd Cir. 2009) quoting *Tinker*, 393 U.S., at 509.

83. A local government, such as a school district, may be liable for deprivation of a constitutional right under color of law, "when execution of a edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978).

84. Defendants' policy and practice give unbridled discretion to school officials by permitting them to forbid messages that they personally deem to be offensive and allow messages they personally do not deem offensive.

85. Defendants' policy and practice is overly broad because they restrict student speech that does not and will not materially disrupt the educational process.

86. This overbreadth chills the speech of students who wish to levy criticism of public officials.

87. Defendants' policy and practice has no compelling or legitimate reason that would justify their censorship of the message that C.C. seeks to express.

88. Defendants' policy and practice are not the least restrictive means of achieving any compelling interest they may allege.

89. Defendants' policy and practice are not reasonably related to any legitimate pedagogical concerns.

90. Censoring students' protected speech *per se* is not and cannot be a legitimate

pedagogical concern.

91. Due to the actions of the Defendants, Plaintiff has been harmed by the deprivation of her constitutional rights.

92. Pursuant to the "*Noerr-Pennington* Doctrine," the school's regulatory authority, i.e., the "Substantial Disruption Test," cannot be interpreted to chill constitutionally-protected speech. The U.S. Supreme Court developed the *Noerr-Pennington* Doctrine to protect the constitutional rights of private persons who attempt to influence public officials, even when those efforts are otherwise illegal (such as violating anticompetition rules within the Sherman Antitrust Act of 1890). *United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 669-70, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965); *E. Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 136-38, 81 S.Ct. 523 (1961). These cases and their progeny recognize that the generally broad reach of certain laws have to be restrained where such liability would impair the exercise of constitutional rights, such as First Amendment rights. *Dell, Inc. v. 3K Computers, LLC*, 89 U.S.P.Q.2d 1958, 1959, 2008 WL 6600766 (S.D. Fla. 2008).

93. Because Ferini and Keeple punished C.C. for the content of his speech, they violated C.C.'s Free Speech rights under color of law and are liable pursuant to § 1983.

94. Because the District's policies and customs unconstitutionally deprived and continue to deprive students of protection of their Free Speech rights, the District is liable pursuant to § 1983.

COUNT TWO

FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION:
DUE PROCESS, VAGUENESS
(INJUNCTIVE AND DECLARATORY RELIEF)
(42 U.S.C. § 1983)
Against Defendant Madison Local School District

95. Plaintiff incorporates the preceding as if fully restated herein.

96. The Due Process Clause of the Fourteenth Amendment prohibits the government from censoring speech pursuant to vague standards that grant government officials unbridled discretion.

97. A local government, such as a school district, may be liable for deprivation of a constitutional right under color of law, "when execution of a edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978).

98. Under the Board's policies and customs, students of common intelligence must guess as to whether their expression will be deemed offensive, and thus, subject to censorship and punishment.

99. Defendants' policy and practice of punishing students for criticizing public officials or making statements as to their political preferences, are vague and allow for unbridled discretion in determining which student speech is permissible.

100. Due to the Defendants' actions, Plaintiff was harmed because C.C. was deprived of constitutional rights pursuant to the Fourteenth Amendment to the United States Constitution.

PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court enter judgment against Defendants and provide Plaintiff with the following relief:

A. That this Court issues a Preliminary and Permanent Injunction enjoining Defendants, their officials, agents, employees, and all persons in active concert or participation with them, from enforcing Defendants' policies and customs challenged herein both facially and as-applied so as to prohibit C.C. from expressing her personal viewpoints;

B. That this Court render a Declaratory Judgment, declaring Defendants' policy and custom of treating free speech as a punishable offense, unconstitutional and as-applied to C.C.'s speech;

C. That this Court adjudge, decree, and declare the rights and other legal relations of the parties to the subject matter here in controversy in order that such declarations shall have the force and effect of final judgment;

D. That this Court retain jurisdiction of this matter for the purpose of enforcing this Court's order;

E. That this Court grant an award of actual damages against Defendants in an amount this Court deems appropriate;

F. That this Court grant to Plaintiff reasonable costs and expenses of this action, including attorney's fees in accordance with 42 U.S.C. § 1988;

G. That this Court grant requested injunctive relief without a condition of bond or other security being required of Plaintiff;

- 17 -

    H.    That this Court grant such other relief as the Court deems appropriate.

Plaintiff demands a trial by jury.

| | |
|---|---|
| March 26, 2025 | Respectfully Submitted, |
| | /s/ Joshua J. Brown |
| | Joshua J. Brown (0089836) |
| | The Law Office of Josh Brown LLC. |
| | 1554 Polaris Parkway, Suite 325 |
| | Columbus, OH 43240 |
| | P: (614) 383-8886 |
| | F: (614) 388-3947 |
| | josh@joshbrownesq.com |
| | Attorney for Plaintiff |