UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| RICHARD P. CONRAD, JR., individually and as parent and natural guardian of his child C.C. ) ) ) ) ) | CASE NO.1:25CV600 |
| Plaintiff, ) ) | JUDGE CHRISTOPHER A. BOYKO |
| vs. ) ) ) | OPINION AND ORDER |
| MADISON LOCAL SCHOOL DISTRICT BOARD OF EDUCATION, ET AL., ) ) ) ) | |
| Defendants. ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Plaintiff's Application for Preliminary Injunction. (ECF #8). For the following reasons, the Court denies Plaintiff's Motion.

**Background Facts**

On March 26, 2025, Plaintiff Richard P. Conrad, Jr., on behalf of himself and his minor child C.C., filed his Verified Complaint with the Court alleging violations of his First Amendment rights by all Defendants and his Fourteenth Amendment rights by Madison Local School District Board of Education when they punished C.C. for wearing a shirt that displayed the phrase "Let's Go Brandon."

According to his Verified Complaint, C.C. wore the shirt on November 25, 2024, underneath a flannel shirt. Plaintiff alleges:

> The phrase "Let's Go Brandon" communicates criticism of certain media outlets for a well-documented pattern of misreporting facts in a politically biased fashion.

> In this particular incident, a large crowd at a NASCAR race was heard shouting a profane disdain for then-President Joseph R. Biden, chanting "F*** Joe Biden." The reporter on the scene reported the chant as "Let's go Brandon," as if the chant was actually praise for the winner of the race, whose first name was Brandon. From that point forward, that moment was perceived as a microcosm of a larger problem, and "Lets Go Brandon" became a popular expression of certain people's opinion toward the media and American politics.

> Plaintiff alleges C.C. wore the shirt the previous school year without complaint.

However, on this particular day, Defendant Krista Ferini, a teacher and registered democrat, told C.C. to "button that up. I know what that means." C.C. complied and buttoned up his flannel shirt. Later that day, while in a classroom that lacked air conditioning, C.C. took off his flannel shirt. When Ferini saw C.C. without the flannel covering up his Let's Go Brandon t-shirt she wrote him up. Due to the write-up C.C. reported to Defendant Andrew Keeple, Principal of C.C.'s school. Keeple instructed C.C. to wear the flannel the rest of the day and to never wear the shirt to school again. However, C.C. did wear the shirt again in January of 2025. Once again, Ferini confronted C.C. asking if he liked offending people. Plaintiff alleges no one else had complained about the t-shirt. Yet, Keeple called Conrad to inform him that C.C. had once again violated the school's dress code and if he did it again there would be further disciplinary action taken because the message was code for a vulgar expression. Conrad disagreed with Keeple about the message the t-shirt conveyed and informed Keeple he would not instruct C.C. to stop wearing the t-shirt. On March 24, 2025, C. C. wore the t-shirt again without any other student or staff member complaining or objecting. Yet, he received a detention from Keeple. Two more times C.C. was disciplined by the school for violations of the Student Code of Conduct Rule L1-L14(Repeated Violations of Code of Conduct).

2

**Preliminary Injunction Application**

On May 7, 2025, Plaintiff filed his Application for Preliminary Injunction asking the Court to enjoin Defendants from prohibiting C.C. from participating in school trips to the Mansfield Reformatory and Cedar Point. According to Plaintiff, C.C. is being punished for engaging in free speech. Irreparable harm is presumed when a person's constitutional rights are violated and there is a substantial likelihood of success on the merits because C.C. has engaged in political speech which is entitled to the greatest protections under the Constitutions of the United States and Ohio. In particular, this is viewpoint based restrictions as Madison Schools have allowed other forms of political expression without punishment. Moreover, there was no disruption caused by C.C. wearing the shirt.

C.C. alleges he will also be irreparably harmed by missing out on this school trip and from the stigma of not being allowed to attend. He further asserts that the public interest is best served by allowing free speech.

**Defendants' Opposition**

According to Defendants, Plaintiff is unlikely to succeed on the merits as a court within the Sixth Circuit, dealing with this identical issue in a school environment, ruled against the student. In a case out of Michigan, two students wore "Let's Go Brandon" shirts. The school district disciplined the students and they sued. In ruling on summary judgment for the school district the court held the school's interpretation that the phrase was a vulgar euphemism was reasonable and therefore violated the school's code of conduct.

Because Madison did not violate the student's free speech rights, it cannot be liable under a *Monell* theory as there is no underlying constitutional violation. In addition, there is no

3

constitutional violation for a school policy prohibiting profane or vulgar language as determined by the United States Supreme Court.

In the absence of a constitutional violation there is no irreparable harm for disciplining C.C. under the Student Code of Conduct. Moreover, Plaintiff waited six months before bringing suit, thus there is no immediacy. In addition, Plaintiff failed to submit a permission slip and funds as required by the school for the field trip to Cedar Point.[1] Also, the Defendants are the ones facing irreparable harm as a finding in favor of Plaintiff would negate the school district's disciplinary authority.

Plaintiff pointed out in the status conference with the Court that Madison informed him he could not go on the field trips due to his disciplinary history. Thus, it was pointless for him to fill out the permission slip and pay the fee. Moreover, the Michigan case is distinguishable as the students in that case admit they wore the shirts because they thought it was funny and not to express political speech.

## LAW AND ANALYSIS

**Standard of Review**

Injunctive relief is an extraordinary remedy and is issued cautiously and sparingly. *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312-313 (1982).

Four factors must be considered when deciding whether to grant an injunction: (1) whether the movant has a strong likelihood of success on the merits; (2) whether there is a threat of irreparable harm to the movant; (3) whether others will suffer substantial harm as a

---

[1] The Mansfield Reformatory trip was May 8, 2025 therefore, the Preliminary Injunction motion is moot as pertains to that trip.

4

result of the injunction, should it issue; and (4) whether the public interest will be served by the injunction. *See Rock & Roll Hall of Fame and Museum, Inc. v. Gentile Prods*., 134 F.3d 749, 753 (6th Cir. 1998); *Vittitow v. Upper Arlington*, 43 F.3d 1100, 1109 (6th Cir. 1995) (the four factors are "not prerequisites to be met, but factors to be balanced."); *D.B. v. Lafon*, 2007 U.S. App. LEXIS 3886 (6th Cir. 2007). While no single factor will be determinative as to the appropriateness of the equitable relief sought, (*In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985)), "a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000).

The moving party must establish its case by clear and convincing evidence. *See Deck v. City of Toledo*, 29 F.Supp. 2d 431, 433 (N.D. Ohio 1998), *citing Garlock, Inc., v. United Seal, Inc*., 404 F.2d 256, 257 (6th Cir. 1968). Clear and convincing evidence must produce a firm belief about the facts to be proved. It must be more than evidence that simply outweighs or overbalances the evidence opposed to it.

**Substantial Likelihood of Success on the Merits**

In *Morse v. Frederick,* 551 U.S. 393, 127 S.Ct. 2618, 168 L.Ed.2d 290 (2007), the United States Supreme Court established the basic framework for free speech in a school setting. "Our cases make clear that students do not 'shed their constitutional rights to freedom of speech or expression at the schoolhouse gate'." *Tinker v. Des Moines Independent Community School Dist.,* 393 U.S. 503, 506, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). "At the same time, we have held that the 'constitutional rights of students in public school are not automatically coextensive with the rights of adults in other settings,'" *Bethel School Dist. No. 403 v. Fraser,* 478 U.S. 675, 682, 106 S.Ct. 3159, 92 L.Ed.2d 549 (1986), "and the rights of students 'must be 'applied in light of

5

the special characteristics of the school environment,'" *Hazelwood School Dist. v. Kuhlmeier,* 484 U.S. 260, 266, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988) (quoting Tinker, supra, at 506, 89 S.Ct. 733). "In each situation, a court must consider both the First Amendment interests of the students and the educational mission of the schools." *D.A. by & through B.A. v. Tri Cnty. Area Sch.,* 746 F. Supp. 3d 447, 456 (W.D. Mich. 2024). Political speech, of course, is "at the core of what the First Amendment is designed to protect." *Morse,* 551 U.S. at 403, quoting *Virginia v. Black*, 538 U.S. 343, 365, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003) (plurality opinion) However, the Sixth Circuit has noted "it has long been held that despite the sanctity of the First Amendment, speech that is vulgar or profane is not entitled to absolute constitutional protection." *Bonnell v. Lorenzo,* 241 F.3d 800, 821 (2001).

In *Fraser,* the United States Supreme Court found that a student engaged in speech not protected by the First Amendment. At a Pierce County, Washington, high school assembly, student Matthew Fraser delivered a speech nominating a fellow student for an elected office. Fraser's speech used "an elaborate, graphic, and explicit sexual metaphor" to describe his chosen candidate. *Fraser,* 478 U.S. at 678, 106 S.Ct. 3159. The school rules forbade certain conduct, "including the use of obscene, profane language or gestures." *Id.* The school suspended Fraser, who later sued. The Court reasoned that it had "recognized an interest in protecting minors from exposure to vulgar and offensive spoken language." *Id.* at 684, 106 S.Ct. 3159. And, the Court found that "it is a highly appropriate function of a public school education to prohibit the use of vulgar and offensive terms in public discourse." *Id.*

In *D.A.,* two students wore shirts with the phrase "Let's Go Brandon." The district court on summary judgment held that the school's interpretation that the phrase was a vulgar

euphemism was reasonable and granted judgment for the school.

While this case presents serious questions of student free speech versus a school's interest in protecting students from vulgar and profane speech, the Court finds Plaintiff has not met his high burden to show a substantial likelihood of success on the merits by clear and convincing evidence. While the *D.A.* case was on summary judgment and presented facts that are different than those before this Court, Defendant's burden on summary judgment was a preponderance standard which is a lesser burden than Plaintiff's here. Moreover, that case presented fact issues going to the reasonableness of the school's interpretation. Here, as Defendants point out, Plaintiff acknowledges in his Verified Complaint that "Let's Go Brandon" is a euphemism for F*#% Joe Biden. "In school speech cases where a school limits or restricts a student's expression, courts must determine whether the school's interpretation of the expression is reasonable." *D.A.*, 746 F. Supp. 3d at 458, citing *Morse*, 551 U.S. at 401. "The student's expression must be considered in the proper context but the student's motivation or subjective intent is irrelevant." *D.A.*, 746 F. Supp.3d at 459.

Given the strong interests of both sides, the unique characteristics of speech in a school setting, the finding by at least one court in this circuit that the school's interpretation of the phrase as vulgar was reasonable, and the acknowledgment in this case by Plaintiff that the phrase is a vulgar euphemism, the Court finds Plaintiff has not shown a substantial likelihood of success on the merits to support injunctive relief. This does not mean Plaintiff cannot win on the merits of the claim as discovery will likely provide clearer evidence on the reasonableness of the interpretation. But given the high standard for injunctive relief, the Court finds against Plaintiff.

**Irreparable harm**

"A plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages. (Internal citation omitted). Courts have also held that a plaintiff can demonstrate that a denial of an injunction will cause irreparable harm if the claim is based upon a violation of the plaintiff's constitutional rights." *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't,* 305 F.3d 566, 578 (6th Cir. 2002). Here, the Court has already determined that Plaintiff has not shown by clear and convincing evidence that he has a substantial likelihood of success on the merits. While he alleges constitutional violations, the harm he seeks to enjoin is being denied an opportunity to go with his class to Cedar Point, a local amusement park. Plaintiff was first disciplined for wearing the shirt in 2024 and then multiple times in 2025. The school trip is set for May 16, 2025. In the permission slip, payment for the trip was due April 17, 2025 and students with disciplinary actions are prohibited from attending. Thus, Plaintiff was on notice in March that he would be unable to participate yet waited until the week before to file his motion for injunctive relief. Here, missing a class field trip, which students clearly are not entitled to, but must earn through good grades and conduct, is not an irreparable injury warranting the extraordinary relief of injunction. Moreover, although a constitutional violation presumes irreparable harm, Plaintiff has not demonstrated by clear and convincing evidence a substantial likelihood of success on the merits of a constitutional violation and consequently has not show irreparable injury arising from the same.

**Harm to Others**

Plaintiff alleges there is no harm to others if he permitted to attend the class trip and Defendants have not shown his presence would be disruptive. Defendants allege they would

suffer harm if the injunction issues as it would negate its enforcement of a constitutionally permissible student code of conduct.

Here, the Court finds this element does not favor either side as granting or denying a class field trip does not pose a substantial harm to others.

**Public Interest**

Certainly the public has a strong interest in both protecting free speech and in an orderly educational environment. Given these competing interests the Court holds this factor is largely a wash and favors neither granting nor denying an injunction.

## CONCLUSION

Plaintiff has not established a substantial likelihood of success on the merits of his constitutional claims that Defendants denied him his First or Fourteenth Amendment rights by punishing him for wearing a "Let's Go Brandon" shirt. Nor has he shown irreparable harm from being denied a class field trip due to his purported misconduct and failure to pay the field trip fee and timely submit a permission slip.

Therefore, the Court denies Plaintiff's Preliminary Injunction Motion.

**IT IS SO ORDERED.**

**DATE: May 12, 2025**

 s/Christopher A. Boyko
**CHRISTOPHER A. BOYKO**
**Senior United States District Judge**